### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF ILLINOIS
### EAST ST. LOUIS DIVISION

| | |
|---|---|
| KENNETH BOUAS, | Case No. 3:19-cv-1367 |
| Plaintiff | |
| v. | **CLASS ACTION COMPLAINT** |
| HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC | |
| Defendant. | |

### CLASS ACTION COMPLAINT

Plaintiff Kenneth Bouas, on behalf of himself and other Illinois residents similarly situated, brings this action against Harley-Davidson Motor Company Group, LLC ("Harley-Davidson"), and alleges as follows:

### INTRODUCTION

1.      This action arises from Harley-Davidson's sale of tens of thousands of motorcycles with a hidden and dangerous defect in their antilock braking systems ("ABS"). These subject motorcycles all have a defective wiring harness that will uniformly fail under normal operation and far short of their intended lifespan, causing the ABS to cease functioning without warning or any obvious sign to the rider.

2.      Harley-Davidson instructs its riders to use different, nearly opposite braking techniques in emergency situations, depending on whether they have ABS-equipped motorcycles or not. The braking technique Harley-Davidson recommends for an ABS-equipped motorcycle, when used on a non-ABS motorcycle, will, in Harley-Davidson's own words, cause a locked wheel that "can cause loss of vehicle control . . . result[ing] in death or serious injury."

3.     Harley-Davidson knew of this specific wiring harness defect since at least 2008. Despite knowing of the wiring harness defect since at least 2008, despite knowing that the operator of a motorcycle with a defective ABS wiring harness would have no immediate signal that his motorcycle's ABS had failed, and despite knowing that a rider following ABS braking instructions on a motorcycle lacking it could apply the brakes in such a way as to cause serious injury or death, Harley-Davidson has taken no action to disclose the existence of this material safety defect nor its consequences to owners and operators of these motorcycles, or to repair, replace, repurchase, or upgrade affected motorcycles.

## PARTIES

4.     Plaintiff Kenneth Bouas is a citizen and resident of Shiloh, Illinois, who purchased a 2008 Harley-Davidson Street Glide from Frieze Harley-Davidson, now known as Green Mount Road Harley-Davidson, a Harley-Davidson dealer in O'Fallon, Illinois.

5.     Defendant Harley-Davidson Motor Company Group, LLC is a wholly owned subsidiary of Harley-Davidson, Inc.  Harley-Davidson, Inc. is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin. Harley-Davidson, Inc. is Harley-Davidson Motor Company Group, LLC's sole member. Thus, Harley-Davidson Motor Company Group, LLC is a citizen of Wisconsin.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1). The amount in controversy for the proposed Class as defined herein and the Defendant exceeds $5,000,000, exclusive of interest and costs. At least one member of the putative Class as defined herein is a citizen of a state different from the states in which Defendant is a citizen.

Harley-Davidson Motor Company Group, LLC is a wholly owned subsidiary of Harley-Davidson, Inc, a citizen of Wisconsin.

7. This Court has personal jurisdiction over Harley-Davidson in this matter. Plaintiff Boas purchased his Harley-Davidson motorcycle at issue in this suit in this State from a Harley-Davidson dealer. Through the placing of its contact in this State—Plaintiff's motorcycle—Harley-Davidson purposefully availed itself to the benefits and protections of this State and that contact is related to this suit.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that Plaintiff Bouas is a resident of this District and many of the acts and transactions giving rise to this action occurred in this District. Further, Harley-Davidson is authorized to conduct business in this District; has availed itself of the laws and markets within this District through the promotion, marketing, distribution, and sale of its products in this District; does substantial business in this District; and is subject to personal jurisdiction in this District.

## CLASS ACTION ALLEGATIONS

9. Plaintiff brings this action as a class action pursuant to Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure, and proposes the following class:

> All individuals and entities in Illinois who purchased or leased a model year 2008 – 2010 Harley-Davidson Touring or CVO Touring model Motorcycle (the "Class Motorcycle").

10. Excluded from the proposed class are those who purchased the products for resale; members of the federal judiciary and their relatives; and Defendant's officers, director and employees.

## Typicality And Numerosity

11.     The claims of the named Plaintiff Bouas are typical of the claims of the Class. Plaintiff's claims are typical of those of other members of the Class as there are no material differences in the facts and law underlying the claims of Plaintiff and the Class, and by prosecuting his claims, Plaintiff will advance the claims of class members.

12.     While the exact number of class members is unknown to Plaintiff now, the Class—upon information and belief—contains thousands of members. The potential class members are so numerous that joinder of all members of the Class is impracticable.

**Commonality And Predominance**

13.     This action involves questions of fact common to all class members because all class members purchased or owned Harley-Davidson motorcycles containing the defective ABS and were subject to the same material omissions from Harley-Davidson. Such common questions of law and fact at issue for the class include, but are not limited to

    a.     whether the Class Motorcycles contain a defect;

    b.     whether Harley-Davidson failed to disclose the existence of this defect or its consequences;

    c.     whether failing to disclose the existence of the defect and its consequences is an actionable omission under Illinois law;

    d.     whether Harley-Davidson's conduct took place in the course of conduct involving a trade or commerce;

    e.     whether Harley-Davidson intended that class members rely on the omission;

    f.     whether class treatment of the claims asserted herein is appropriate; and

4

g.      whether Plaintiff and the class members are entitled to the relief sought herein.

14.     These common questions of law and fact among all class members predominate over any issues affecting individual members of the class.

**Superiority**

15.     Class treatment of the claims set forth herein is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed class members to prosecute their claims individually. Absent a class action, a multiplicity of individual lawsuits would be required to address the claims between class members and Harley-Davidson, and inconsistent treatment and adjudication of the claims would likely result.

16.     The litigation and trial of Plaintiff's claims is manageable. The defects affecting the subject 2008-2010 Harley-Davidson Touring model motorcycles were common across all models and model years of the subject motorcycles, and Harley-Davidson maintains records making these motorcycles, and their purchasers, easily identifiable. The consistent provisions of the relevant laws, and the readily ascertainable identities of the subject motorcycles and many class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

17.     Unless a class-wide injunction is issued, Harley-Davidson will continue to ignore and cover up information concerning the dangerous defect affecting all the subject Harley-Davidson motorcycles, and the members of the Class will continue to be deprived of a fix to this dangerous problem, and potentially remain endangered.

**Harley-Davidson Has Acted And Refused Act On Grounds
Applicable To The Class As A Whole**

18.     Under Federal Rule of Civil Procedure 23(b)(2), Harley-Davidson has acted and refused to act on grounds that apply generally to the Class as a whole, making injunctive and declaratory relief appropriate.

19.     The conduct at issue—Harley-Davidson's practices in refusing to disclose the existence of a dangerous defect in 2008–2010 Touring and CVO Touring models—apply to all members of the putative Class equally. This conduct is ongoing. A finding that such conduct is unlawful and changes to those practices will apply to all class members equally.

## FACTUAL ALLEGATIONS

### Allegations Common To All Class Members

20.     Harley-Davidson manufactures motorcycles for sale to the public.

21.     Harley-Davidson added an optional anti-lock braking system ("ABS") to its 2008 model year Touring and CVO Touring model motorcycles, which went on sale to the public in September 2007.

22.     Because it was an optional feature, Harley-Davidson charged significantly more for motorcycles with ABS as opposed to previous and non-ABS motorcycles. For instance, the list price of a 2007 Harley-Davidson Road King Classic was $18,255.[1] The list price of a 2008 Harley-Davidson Road King Classic with ABS was $19,320.[2] Harley-Davidson suggested a list price of $795 for the ABS option on its Touring and CVO Touring motorcycles.[3]

---

[1]     Pricing information obtained from NADA Bluebook Price Guides, found at https://www.nadaguides.com/Motorcycles/2007/Harley-Davidson/FLHRC-ROAD-KING-CLASSIC-1584cc/Values, last visited April 11, 2019.

[2]     *Id.* at https://www.nadaguides.com/Motorcycles/2008/Harley-Davidson/FLHRC-ROAD-KING-CLASSIC-1584cc/Values, last visited April 11, 2019.

[3] *Id.*

23.     Harley-Davidson aggressively and extensively marketed the ABS feature on the Touring and CVO Touring model motorcycles. In the leadup to and after the release of the ABS motorcycles, Harley-Davidson touted the efficacy and benefits of the ABS through written materials including that it "offer[s] consistent braking and stopping power under all operating conditions [with] improved brake performance and feel . . ."[4] and that it was "carefully tested . . . ."[5] Harley-Davidson also touted the benefits of the system in videos, including one posted to youtube.com on June 30, 2008, but in existence before, that stated the ABS motorcycles "provide the best emergency braking performance overall . . . ."[6]

24.     Harley-Davidson instructed its riders to brake differently depending on whether they were riding a motorcycle with or without ABS. On motorcycles **with** ABS, Harley-Davidson instructed riders facing an emergency braking situation to maintain continuous braking pressure on the brakes until the motorcycle had slowed sufficiently, and told them "[d]o not modulate or 'pump' the brake controls. The wheels won't lock until the end of the stop."[7] On motorcycles **without** ABS, Harley-Davidson instructed riders facing an emergency to release and reapply the brakes when a wheel began to skid.[8] Harley-Davidson warned riders on non-ABS motorcycles **not**

---

[4] Harley-Davidson Media Release Regarding 2008 Touring Models (obtained from https://www.topspeed.com/motorcycles/motorcycle-news/2008-harley-davidson-touring-models-a-sweet-way-to-ride-ar39443.html, last visited June 3, 2019). The language quoted was part of a media release created by Harley-Davidson regarding the 2008 Touring Models.
[5] Harley-Davidson, 2008 Motorcycles – the 105th Model Year. This is promotional literature created and distributed by Harley-Davidson to induce potential customers to purchase motorcycles, including class motorcycles.
[6] Video "Harley-Davidson: Anti-lock Braking System" (accessed via https://www.youtube.com/watch?v=YQ6R8vNm7_M, last visited June 5, 2019)
[7] 2008 Harley-Davidson FLHR Road King Owner's Manual, p. 6 (obtained from https://ownersmanuals2.com/harley-davidson/road-king-classic-2008-owners-manual-66565, last visited April 11, 2019), p. 39.
[8] 2008 Harley-Davidson FLHR Road King Owner's Manual, p. 6 (obtained from https://ownersmanuals2.com/harley-davidson/road-king-classic-2008-owners-manual-66565, last visited April 11, 2019), p. 38.

to brake strongly enough to lock the wheels: "A locked wheel will skid and can cause loss of vehicle control, which could result in death or serious injury."[9]

25.     Put simply, Harley-Davidson instructed its riders to use different, functionally opposite braking techniques in emergency situations, depending on whether they had ABS-equipped motorcycles or not. The braking technique Harley-Davidson recommended for an ABS motorcycle, when applied on a non-ABS motorcycle could, in Harley-Davidson's own words, result in a locked wheel that "can cause loss of vehicle control . . . result[ing] in death or serious injury."

26.     As early as 2008, Harley-Davidson learned through its own internal testing protocols, and through customer complaints relating to ABS issues—mostly from law enforcement agencies—that were not disclosed to the public, that the ABS on its Touring and CVO Touring model motorcycles was malfunctioning due to wire breakage in the ABS wiring harness.

27.     In Harley-Davidson's own durability testing of Touring Models in 2008, it discovered that due to a defect in all Touring models, wires connecting the front wheel-speed sensor to the motorcycles' engine control unit (ECU) – a critical component of the ABS – were prone to breakage during normal operation.

28.     Harley-Davidson's testing of the 2008 Touring models revealed that the normal motion of turning the front wheel back and forth would lead to breakage in the wires connecting the speed sensor to the ECU in an abnormally short time – far shorter than the expected lifespan of the subject components – and with no obvious signal to the owner that the wires had been damaged.

---

[9] *Id.*, pp. 32, 38, and 39.

29.     Harley-Davidson knew that, if those wires broke, the ABS would become non-functional, leaving the motorcycle with only standard "foundation" braking—requiring a completely different set of braking techniques to stop the motorcycle in an emergency.

30.     Harley-Davidson's testing of the 2008 models also revealed that the defect manifested itself in a largely undetectable way. The ABS warning light was designed to alert the rider that the ABS was no longer functioning by detecting a loss of electrical current in the system. However, because the defect causes fracturing of the subject wiring, the electric current is inconsistent; in one instant the current may be flowing and in the next it may not. In sum, Harley-Davidson's testing revealed that the ABS warning light was insufficient to alert the rider as to whether or not the ABS was functioning. The ABS warning light did not function, did not function regularly, and was otherwise insufficient to alert riders.

31.     Upon information and belief, a rider with a malfunctioning ABS could face an emergency, apply the brakes exactly as instructed by Harley-Davidson, and, with no notice that his motorcycle had a non-functioning ABS, lock the wheels – potentially causing a sudden, violent, loss of control that, as Harley-Davidson warned, could result in death or serious injury.

32.     Harley-Davidson received complaints of ABS problems from private citizens and from municipalities whose motorcycle law enforcement officers had experienced ABS failures. These complaints were not made known to the public.

33.     Harley-Davidson continued to sell 2008 Touring and CVO Touring motorcycles with these same exact problems after learning of them and without making any disclosure about the issue. Additionally, Harley-Davidson's 2009 and 2010 Touring and CVO Touring model motorcycles contained the same defective ABS wiring harness as its 2008 models, yet Harley-Davidson changed nothing in its instructions to its riders, in its communications to consumers, in

its service bulletins to its dealers, nor in its dealings with state and federal safety regulatory agencies. Harley-Davidson sold model year 2009 and 2010 Touring and CVO Touring with the same ABS defect, again without any disclosure as to the issues with the system.

34.     While Harley-Davidson began and continued work on a design change that would alleviate this issue, it instructed its dealers to continue to service motorcycles with the existing, defect ABS system without changing any components or disclosing to the owners that this defect existed. Harley-Davidson sold tens of thousands more defective Touring and CVO Touring motorcycles in both 2009 and 2010, despite learning of the problem in 2008.

35.     Despite knowing that these expensive, powerful motorcycles contained a hidden and dangerous defect in their braking systems that could lead to serious injury or death, Harley-Davidson did nothing whatsoever to notify its owners or dealers of these issues, or to retrofit affected motorcycles to alleviate this problem in 2009 or 2010.

36.     Owners of defective 2008 through 2010 Harley-Davidson Touring and CVO Touring motorcycles experienced ABS failures during operation that led directly to losses of control, crashes, and serious injury.

37.     In 2016, the National Highway Traffic Safety administration began investigating complaints related to ABS problems in many Harley-Davidson motorcycles, including the 2008-2010 Touring and CVO Touring models. These complaints stemmed from a defect in those motorcycles' hydraulic control units: if the brake fluid on affected motorcycles was not flushed every two years, the ABS in those motorcycles could fail due to a clogged valve in the ABS hydraulic control unit.

38.     Unlike the failure of Harley-Davidson's defective ABS wiring harness, the hydraulic control unit defect in these motorcycles was easy to detect: when it occurred, the

motorcycle's brake lever would feel hard, and be difficult or impossible to operate. Thus, riders of a motorcycle affected with this hydraulic control unit defect would have an obvious and immediately apparent reason to suspect that their brakes were not functioning properly.

39.     At NHTSA's urging, in 2018 Harley-Davidson began a nationwide recall of its 2008-2010 Touring and CVO Touring motorcycles to correct the issue relating to the ABS hydraulic control unit.

40.     Critically, despite issuing a nationwide recall of over 175,000 motorcycles to correct a hydraulic defect in their braking systems, Harley-Davidson took no steps whatsoever to address or even disclose the separate, dangerous problem stemming from breakage of wires in the wiring harness of the 2008-2010 Touring and CVO Touring motorcycles' ABS during this recall. This course of conduct worked to obfuscate the wire breakage defect, making it practically impossible for Plaintiff and Class Members to discover it. The defective wiring harness at issue in this case was not a part of the NHTSA investigation that led to the 2018 recall.

41.     To this day, Harley-Davidson has not issued any public notice, owner communication, warranty modification, buyback program, or recall for the tens of thousands of 2008-2010 model-year Touring and CVO Touring model motorcycles with a defective ABS system, many of which are still on the roads today, driven by unsuspecting members of the public and law enforcement agencies.

42.     Owners and operators of these defective Harley-Davidson motorcycles still believe they are riding motorcycles with an ABS that will work in all conditions – and especially in an emergency braking situation. If those operators follow the instructions provided to them by Harley-Davidson, and their motorcycles suffer wire breakage, or have already suffered a wire breakage without any warning or clear indication of nonexistent ABS to the owner, due to a defect known

to Harley-Davidson since 2008, they could lock the wheels and experience a sudden loss of control leading to a crash that could result in serious injury or death.

43.     Additionally, purchasers or lessees of the defective Class Motorcycle, such as Plaintiff and Class Members, suffer an economic loss. These purchasers believed they were purchasing motorcycles with functional anti-lock brakes, for which they paid nearly $1000 over the price of a similar, non-ABS motorcycle, when in fact they were purchasing motorcycles with a braking system that is guaranteed to lose anti-lock braking performance well short of its expected life and likely during an emergency situation. It is axiomatic that such persons would not elect to pay $1000 extra for a feature that would fail to work when needed. By failing to disclose the existence of the defective ABS wiring harness, Harley-Davidson caused economic harm to all purchasers and lessees of Class Motorcycles by offering motorcycles that were less valuable than Harley-Davidson promised, or that those persons expected they were receiving.

44.     Plaintiff and Class Members paid a nearly $1000 premium for powerful, heavy motorcycles with an antilock braking system, so that if those motorcycle owners experienced an emergency situation, they would be able to safely, predictably, confidently apply full braking power and bring their motorcycles to a controlled stop. Because of the defective components in the Class Motorcycle's ABS, these motorcycle owners instead ended up with an ABS that – when they most need to rely on it – will eventually do exactly the opposite of what its riders intend and what Harley-Davidson explicitly represents: it will fail, the brakes will lock the wheels, and a serious crash will likely ensue.

### Allegations Specific To The Class Representative

45.     Plaintiff Kenneth Bouas resides in Shiloh, Illinois.

46.     Mr. Bouas began looking for a new Harley-Davidson motorcycle in 2008. Mr. Bouas specifically sought out a motorcycle with antilock brakes, because he believed that an ABS-equipped motorcycle would be safer to operate, and would help him avoid crashing in an emergency.

47.     After reviewing advertisements and promotional materials about ABS-equipped motorcycles, Mr. Bouas went to Frieze Harley-Davidson in O'Fallon, Illinois to purchase a motorcycle. Mr. Bouas specifically sought out an ABS-equipped motorcycle, even though similar non-ABS motorcycles were available from the Harley-Davidson dealer at lower cost.

48.     While Mr. Bouas was shopping for and purchasing his ABS-equipped Harley-Davidson, representatives of Harley-Davidson provided him with a promotional DVD that highlighted the alleged performance and safety benefits of the ABS on his motorcycle.

49.     In 2008, Mr. Bouas purchased a new Harley-Davidson Street Glide motorcycle from Frieze Harley-Davidson, equipped with an anti-lock braking system.

50.     Prior to Mr. Bouas's purchase, Harley-Davidson knew of the defect complained of herein.

51.     As of the filing of this Complaint, Mr. Bouas's motorcycle is equipped with a defective ABS wiring harness.

52.     Mr. Bouas is a conscientious owner of his 2008 Harley-Davidson Street Glide. He has it serviced regularly, with oil and fluid changes performed at regular intervals. Mr. Bouas keeps his motorcycle in a climate-controlled basement.

53.     In 2018, Mr. Bouas received notice of a nationwide recall involving the ABS on Harley-Davidson motorcycles, including his 2008 Street Glide. Mr. Bouas took his motorcycle in

for service to his Harley-Davidson dealership, now known as Green Mountain Road Harley-Davidson, to have the service performed.

54.     Based on statements made to him by Harley-Davidson after completion of that recall service, Mr. Bouas believed that his motorcycle's ABS had been restored to a fully functional operational condition.

55.     In the summer of 2019, Mr. Bouas washed his motorcycle and then took it out for a ride. While riding, Bouas noticed that his brakes felt unusual, and his motorcycle's ABS light came on when he started his motorcycle and then stayed on for the duration of his ride. Bouas returned home and parked his motorcycle; the ABS light remained on until Bouas switched the motorcycle off. When he next rode the motorcycle, Bouas did not notice any unusual brake performance, and his ABS light did not remain illuminated after the initial systems check following ignition.

56.     The phenomenon Mr. Bouas experienced is precisely the manner in which the defect at issue in this case manifests itself. There are no other indications that Mr. Bouas's ABS is damaged or malfunctioning in any way. The infrequent, irregular ABS light illumination and then shut off is not consistent with the manifestation of any other issue with the ABS system. As such, Mr. Bouas's motorcycle has manifested the defect at issue in this case.

57.     Prior to this time, and in large part due to Harley-Davidson's conduct in concealing and failing to disclose the defect, Mr. Bouas would have had no notice that his motorcycle was defective. Because it is a technical defect hidden deep within in the electrical system, neither Mr. Bouas nor any other class member could have had any way to detect it. Mr. Bouas cannot be charged with the level of diligence required to perform his own personal testing of a hidden wiring harness to prove that, after a sufficient number of turning movements, the subject wire running to

the speed sensor would fracture and leave him without a working ABS system. This level of diligence would be patently unreasonable for an ordinary, reasonable motorcycle consumer. Therefore, the statute of limitations did not begin to run until Mr. Bouas had notice of the defect in 2018.

58.     Mr. Bouas and other owners of Class Motorcycles were further justified in their failure to discover the existence of the defective wiring harness on their motorcycles by the existence of a well-known yet separate, unrelated defect in their motorcycles - which became the subject of a nationwide recall in 2018. Owners of Class Motorcycles could reasonably assume that, after their motorcycles had been subject to a NHTSA-involved recall to correct a defect in the antilock braking system, that any latent defects in that system would also have been addressed and eliminated.

59.     Prior to 2018, Mr. Bouas, putative class members, and the public were ignorant of the existence of the defects because of Harley-Davidson's conduct in concealing the defect. As alleged herein, Harley-Davidson failed to disclose the existence of the defect, preventing Mr. Bouas or any consumer from discovering or having reason to believe that the ABS wiring breakage issue existed. Not only did Harley-Davidson hide the defect from the public, it instructed dealers to continue to sell and repair motorcycles without alerting any customers that the defect existed even though it knew of the defect as early as 2008. As the manufacturer of the Class Motorcycles, Harley-Davidson was in a far better position than Mr. Bouas and the public to know of the defect. They were under a continuing duty to disclose to Mr. Bouas and the public the material defects in the Class Motorcycles and the attendant safety ramifications. By never disclosing this material issue, Harley-Davidson has intentionally failed in living up to that duty. Harley-Davidson's conduct in issuing the recall related to brake fluid further obscured public awareness regarding the

wiring harness defect. In issuing a recall that covered the maintenance-base issue of fluid depositing, Harley-Davidson represented that complying with the recall would make the braking system on Class Motorcycles safe for use, including the ABS. This was not the case as the latent, still undisclosed defect in the wiring harness still made the Class Motorcycles unsafe.

## CLAIMS FOR RELIEF

### First Claim For Relief
### Omission And Concealment Of Material Fact In Violation Of
### 815 ILCS 505/2

60.    All allegations and paragraphs in this Complaint are incorporated by reference.

61.    Harley-Davidson's conduct in failing to disclose the existence and consequences of the ABS defect known to it as described herein constitutes a deceptive act or practice. As more fully described above, Harley-Davidson knew of the existence of this defect as early as 2008 as well as its consequences, yet they failed to disclose the existence and consequence of this defect to Plaintiff and class members. To be clear, the claim of Plaintiff and the class members in this claim for relief does not depend upon Harley-Davidson's affirmative representations about the ABS, but rather its conduct in failing to disclose the defect they knew to exist. Specifically, Harley-Davidson did not disclose that the wire running to the front wheel speed senor would fatigue and break far sooner that its expected life and that the rider would not be adequately warned that their ABS was not functioning.

62.    This omission was material. Had Plaintiff and the class members known that the ABS that they paid a premium for was guaranteed to fail far short of its life-expectancy without warning, and that it would place them in danger, Plaintiff and class members would have acted differently in that they would not have purchased their motorcycles. Knowledge that a major component of a product—in this case an ABS for which a person pays a premium for—will

prematurely fail and leave them in danger due to an insufficient warning system is precisely the type of information a buyer would be expected to rely upon in making a decision whether to purchase the product, in this case the Class Motorcycles. This type of omission is not just a frustration of the expectations of Plaintiff and the class members about the quality of the product, but is instead a serious defect with safety consequences that results in damages.

63.     Harley-Davidson intended that Plaintiff and class members rely on their omission of the existence and consequences of the defect in order to deceive Plaintiff and class members into purchasing their Class Motorcycles and believing that it was not defective.

64.     Harley-Davidson's conduct took place in the course of conduct involving a trade or commerce and Harley-Davidson knowingly placed the materially-defective Class Motorcycles into the stream of commerce.

65.     Harley-Davidson's omission proximately caused damage to Plaintiff and the class members. They paid a premium for the inclusion of the ABS on their Class Motorcycles. Rather than having a functioning ABS, the ABS in the Class Motorcycles is defective and leaves Plaintiff and class members in a more dangerous situation than having a motorcycle with only foundation braking. Some class members like Plaintiff have been further damaged in that the defect has manifested itself and they must be repaired with non-defective parts. Further, the resale value of the Class Motorcycles is diminished. Purchasers of used 2008-2010 Touring and CVO Touring models will not—as Plaintiff and class members did—pay a premium for the inclusion of the ABS which—upon disclosure from a seller actin honestly—they know will not last for its useful life. Because the ABS will fail prematurely, the defect manifesting itself in a dangerous way, purchasers will simply opt for a motorcycle without the optional ABS. This drives the resale value

of the Class motorcycles down, further damaging Plaintiff and class members because of Harley-Davidson's improper omission.

66.     Harley-Davidson's conduct in omitting the existence and consequences of the ABS defect creates a likelihood of further future damages in that the dangerous situation in which Plaintiff and class members find themselves could materialize into actual physical harm due to an accident caused by a non-functioning ABS.

## Second Claim For Relief
### Fraudulent Concealment

67.     All allegations and paragraphs of this Complaint are incorporated by reference.

68.     As fully alleged above, Harley-Davidson concealed a known material fact from Plaintiff and the class members. Specifically, Harley-Davidson failed to disclose that the ABS on the Class Motorcycles would fail prior to expiration of their expected life and that riders would not be adequately warned that the ABS was not functioning.

69.     This omission was material. Had Plaintiff and the class members known that the ABS that they paid a premium for was guaranteed to fail far short of its life-expectancy without warning, and that it would place them in danger, Plaintiff and class members would have acted differently in that they would not have purchased their motorcycles. Knowledge that a major component of a product—in this case an ABS for which a person pays a premium for—will prematurely fail and leave them in danger due to an insufficient warning system is precisely the type of information a buyer would be expected to rely upon in making a decision whether to purchase the product, in this case the Class Motorcycles. This type of omission is not just a frustration of the expectations of Plaintiff and the class members about the quality of the product, but is instead a serious defect with safety consequences that results in damages.

70.     Harley-Davidson intended that this omission induce a false belief that, contrary to actual fact, the ABS on the Class Motorcycles was not defective.

71.     Plaintiff and class members could not have discovered the truth about the defective ABS through reasonable inquiry. In order to determine that the defect was a widespread defect, diligent Plaintiff and class members would be required to perform their own personal testing of a hidden wiring harness to prove that, after a sufficient number of turning movements, the subject wire running to the speed sensor would fracture and leave them without a working ABS system. This level of diligence would be patently unreasonable for an ordinary, reasonable motorcycle consumer. Additionally—in no small part due to Harley-Davidson's conduct—there was no publicly available information about the defect that could alert Plaintiff and the class members as to the defect. Further, Plaintiff and class members were justified in their failure to discover the existence of the defective wiring harness on their motorcycles by the existence of a well-known yet separate, unrelated defect in their motorcycles - which became the subject of a nationwide recall in 2018. Owners of Class Motorcycles could reasonably assume that, after their motorcycles had been subject to a NHTSA-involved recall to correct a defect in the antilock braking system, that any latent defects in that system would also have been addressed and eliminated.

72.     Plaintiff and the class members justifiably relied upon Harley-Davidson's silence as an indication that the concealed fact did not exist because they had no reason to believe or know of its existence. Had they known that the ABS—which they paid a premium for—was bound to prematurely fail, they would not have purchased them.

73.     Harley-Davidson had a duty to disclose the existence of this defect. As more specifically alleged above, this defect is hazardous to the safety of the rider of a Class Motorcycle. Knowledge of such a safety defect gives rise to a duty to disclose.

74.     Additionally, as the manufacturer of the Class Motorcycles with over 100 years of experience in the field, Harley-Davidson was in a far superior position than Plaintiff and class members to know of defects in the Class Motorcycles. This eminent position of superiority gives rise to a duty to disclose.

75.     Further, Harley-Davidson had a duty to disclose the known ABS defect because of its conduct in creating misapprehensions about the ABS. As alleged above, Harley-Davidson touted the efficacy and trustworthiness of the ABS in advertisements disseminated to the public including Plaintiff and the class members. This included representations that the ABS provided the "best emergency braking performance overall" and that the system was "carefully tested." If not untrue, these statements at least paint an incomplete and misleading picture of the ABS system. Though it may have been "carefully tested," that testing revealed that—in reality—the ABS was shown to prematurely fail, giving rise to a dangerous braking system overall. Without the complete truth about the ABS and its defects, Harley-Davidson's representations are misleading. This type of incomplete disclosure gives rise to a duty to disclose.

76.     Harley-Davidson's omission proximately caused damage to Plaintiff and the class members. They paid a premium for the inclusion of the ABS on their Class Motorcycles. Rather than having a functioning ABS, the ABS in the Class Motorcycles is defective and leaves Plaintiff and class members in a more dangerous situation than having a motorcycle with only foundation braking. Some class members like Plaintiff have been further damaged in that the defect has manifested itself and they must be repaired with non-defective parts. Further, the resale value of the Class Motorcycles is diminished. Purchasers of used 2008-2010 Touring and CVO Touring models will not—as Plaintiff and class members did—pay a premium for the inclusion of the ABS which—upon disclosure from a seller actin honestly—they know will not last for its useful life.

Because the ABS will fail prematurely, the defect manifesting itself in a dangerous way, purchasers will simply opt for a motorcycle without the optional ABS. This drives the resale value of the Class motorcycles down, further damaging Plaintiff and class members because of Harley-Davidson's fraudulent omission.

**Third Claim For Relief**
**Unjust Enrichment**

77.     All allegations and paragraphs of this Complaint are incorporated by reference.

78.     To the extent necessary, this claim is pled in the alternative pursuant to Fed. R. Civ. P. 8(d).

79.     Plaintiff and the Class Members conferred substantial benefits on Harley-Davidson by purchasing the defective Class Motorcycles. Harley-Davidson knowingly and willingly accepted, enjoyed, and retained those benefits.

80.     Harley-Davidson's retention of the benefits bestowed by Plaintiff and the class members violates the fundamental principles of justice, equity, and good conscience due to Harley-Davidson's deception in obtaining those benefits by not disclosing the defect in the ABS.

81.     Harley-Davidson's unjust enrichment has resulted in a detriment to Plaintiff and class members as Plaintiff and class members paid Harley-Davidson money to which Harley-Davidson was not entitled.

82.     No remedy for the detriment suffered by Plaintiff and class members is provided by law.

**PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and each member of the Class, seeks full compensatory damages allowable by law, restitution, attorneys' fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a court order enjoining Harley-Davidson's wrongful

acts and practices, restitution, the repair of all Class Motorcycles, replacement of all Class Motorcycles that are not capable of being repaired, the refund of money paid to own or lease all Class Motorcycles, and any other relief to which Plaintiff and Class Members may be entitled.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff and the members of the Class hereby demand trial by a struck jury of all issues triable by right.

Respectfully submitted,

By: /s/ Megan Myers Arvola
Megan Myers Arvola, #6309754 (IL)
The Gori Law Firm, P.C.
156 North Main Street
Edwardsville, Illinois  62025
Phone: (618) 659-9833
Fax:    (618) 659-9834
marvola@gorilaw.com

By: /s/ Evan D. Buxner (with consent)
Evan D. Buxner, of counsel, #6221006 (IL)
The Gori Law Firm, P.C.
156 North Main Street
Edwardsville, IL 62025
Phone: (618) 659-9833
Fax:    (618) 659-9834
evan@gorilaw.com